IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SUPERIOR OFFSHORE | : | CIVIL ACTION |
| INTERNATIONAL, INC. | : | |
| | : | |
| v. | : | |
| | : | |
| BRISTOW GROUP INC., et al. | : | No. 1:09-CV-00438-LDD |

MEMORANDUM

Legrome D. Davis, J.                                                    June 23, 2011

    This is a putative class action arising from alleged horizontal price-fixing in *per se*

violation of the Sherman Act, 15 U.S.C. § 1, which requires a "contract, combination . . . , or

conspiracy in restraint of trade or commerce." According to the Amended Complaint,

Defendants Bristow Group Inc., Era Helicopters, LLC, Era Group Inc., Era Aviation, Inc., PHI,

Inc., and Seacor Holdings Inc. illegally agreed to fix, maintain, or stabilize their prices for

helicopter services to offshore oil and gas industries in the Gulf of Mexico during the period

from January 1, 2001 to December 31, 2005. Plaintiff Superior Offshore International, Inc., the

representative of all putative class members, allegedly purchased helicopter services from

Defendants at inflated prices.[1] Defendants move for summary judgment on the ground that there

is no evidence of an illegal agreement.[2] The motion for summary judgment will be granted, and

judgment will be entered in Defendants' favor and against Plaintiff on all claims.

---

[1] Before this litigation commenced, Superior Offshore International, Inc. filed a Chapter 11 petition
in the U.S. Bankruptcy Court for the Southern District of Texas on April 24, 2008 (No. 08-32590), its
liquidating plan was confirmed on January 28, 2009, and H. Malcolm Lovett, Jr., was appointed as Plan
Agent. Lovett is Plaintiff's sole officer, director, and shareholder. (See Am. Compl. ¶ 4, Doc. No. 51.)

[2] In the Amended Complaint, Plaintiff defines Defendants Era Group Inc., Era Helicopters, LLC,
Era Aviation, Inc., and Seacor Holdings Inc. to be one defendant party designated as "Era." (Am. Compl.
¶ 10.) Seacor Holdings Inc. ("Seacor") objects to this technique, contending that Plaintiff improperly blurs
Defendants' separate corporate identities and their potential liabilities. (See Defs. Brs., Doc. Nos. 31, 64.)
Seacor has reserved its right to assert this defense on the merits, if necessary, at an appropriate time. "Era"
will be used here only for convenient reference to this group of Defendants.

I.    PROCEDURAL BACKGROUND AND FACTUAL ALLEGATIONS

Plaintiff filed the Complaint on June 12, 2009.  On September 4, 2009, in lieu of

answering the Complaint, Defendants moved to dismiss under Federal Rule of Civil Procedure

12(b)(6).  (Doc. Nos. 22, 26.)  By September 14, 2010 Order (Doc. No. 44), the Complaint was

dismissed.  Superior Offshore Int'l, Inc. v. Bristow Group Inc., 738 F. Supp. 2d 505 (D. Del.

2010).  Although the Complaint alleged a "conspiracy" and an illegal "agreement" to raise prices

in restraint of trade, those conclusions rested largely on descriptions of Defendants' parallel

price increases in a highly concentrated, interdependent market for helicopter services in the

Gulf of Mexico in which Defendants were the dominant players.  The alleged parallel conduct

was equally consistent with legal and illegal conduct, and therefore was insufficient to plausibly

suggest that a proscribed anti-competitive agreement had been made.  None of the allegations in

the Complaint, taken singly or together, justified an inference of conspiracy or stated a plausible

claim of price-fixing.  The Complaint did not include enough facts to raise a reasonable

expectation that discovery would reveal evidence of illegal agreement.

On September 28, 2010, Plaintiff moved under Federal Rule of Civil Procedure 59(e) for

reconsideration and amendment of the September 14, 2010 Order.  (Doc. No. 45.)  Plaintiff also

moved for reargument under the Local Rules of Civil Practice and Procedure for the District of

Delaware, D. Del. LR 7.1.5.  (Id.)  Both motions sought leave to amend the Complaint to add

new factual allegations.  (Id.)  On the same day, Plaintiff filed a motion to amend its pleading

under Federal Rule of Civil Procedure 15(a), attaching a proposed amended complaint.  (Doc.

Nos. 46, 46-1.)  According to Plaintiff, amendment of the Complaint was justified by "newly

discovered evidence."  (Pl. Br. at 2, ¶ 2, Doc. No. 45.)  Plaintiff submitted that on September 23,

2010, it "learned for the first time of certain direct evidence of a horizontal agreement in restraint of trade among defendants." (Id.) Plaintiff maintained that this evidence concerned "price-fixing communications between competitors" and "the price fixing agreement alleged in the Complaint."[3] (Id. at 3, ¶ 10; Pl. Br. at 2, ¶8, Doc. No. 46.) On October 12, 2010, Defendants opposed the requested amendment, asking for dismissal of the Complaint with prejudice for failure to plead an actionable antitrust conspiracy. (Doc. No. 47.)

The proposed amended complaint added new factual allegations of price-fixing communications between or among representatives of some Defendants and an alleged predecessor of one Defendant. (Am. Compl. ¶¶ 30-34, Doc. No. 46-1, filed at Doc. No. 51.) Specifically, new allegations were made that Air Logistics, now known as Bristow Group Inc. ("Bristow"), employed a confidential witness ("CW") as its regional sales manager. (Id. ¶ 30.) At Air Logistics' business premises in Lafayette, Louisiana, CW's office was "close" to the office of Gene Graves, Air Logistics' vice president of sales. (Id.) "CW regularly overheard the telephone conversations of Graves because Graves left his office door open." (Id.) In one telephone call sometime during the first half of 2001, CW believed he overheard Graves speaking to "a senior sales and marketing executive of PHI, who CW believed may have been Jim Shuggart [sic], PHI Sales Manager." (Id. ¶ 31.) In that conversation, CW believed he heard Graves:

> (1)     agree to implement a major price increase in offshore helicopter services in the Gulf of Mexico;

---

[3] Plaintiff also submitted that the amendment was warranted by information obtained "[a]fter the briefing on Defendants' Motion to Dismiss the Complaint was completed." (Pl. Br. ¶ 10, Doc. No. 45 at 3; Pl. Br. ¶ 8, Doc. No. 46 at 2.) Briefing closed on December 9, 2009, when Defendants filed a reply brief. (Doc. Nos. 41, 42.) Plaintiff did not submit any new factual information for the Court's consideration until nine months later on September 28, 2010, after the September 14, 2010 Order dismissed the Complaint.

(2)     confirm that ERA had also agreed to make a major price increase at or about the same time;

(3)     represent that Jim Clement, Air Logistics' President, authorized Graves to enter into the agreement between Air Logistics, PHI, and Era to implement a major price increase in or about the first half of 2001;

(4)     stress the importance of Air Logistics, PHI, and Era raising prices in *unison* in order to maintain their respective customer bases; and

(5)     discuss and agree on the timing of price increase announcements.

(Id. ¶ 32 (emphasis in original).)

These amended allegations provided newly alleged facts material to establishing the existence of the posited conspiracy to fix prices.[4]  The remainder of the proposed amended pleading, just like the original pleading, set forth defendants' alleged parallel pricing conduct through circumstances and market conditions publically available to all market participants and observers.  Those circumstances were probative but not sufficient to plausibly allege a proscribed anti-competitive agreement.  Without the newly added allegations, the amended pleading would have been subject to dismissal.  Superior Offshore, 738 F. Supp. 2d at 510, 513-14; Nov. 30, 2010 Order, Doc. No. 48 at 12 ("If [the amended allegations] prove to be ungrounded in fact, Plaintiff's amended pleading would be just as deficient as its original pleading, and would be vulnerable to a dismissal with prejudice.").

By November 30, 2010 Order (Doc. No. 48), the September 14, 2010 Order was amended to clarify that the dismissal was without prejudice.  Plaintiff was granted permission to

---

[4]  The Amended Complaint also added that "[a]fter Air Logistics, PHI and Era implemented the agreed major price increase, senior management of Air Logistics ordered its sales representatives to go out to customers and get the new, increased prices."  (Am. Compl. ¶34.)  This allegation is not probative of whether Defendants reached a meeting of the minds to fix prices in the first instance.

4

file the proposed amended complaint, rendering the request for reargument moot. (Doc. No. 48 at 12.) On December 2, 2010, Plaintiff filed the Amended Complaint. (Doc. No. 51.) Although proof of the new allegations appeared to be doubtful, "Plaintiff's amendments raise[d] some possibility that discovery might reveal some evidence that tends to exclude the possibility that some Defendants were acting independently in pricing their helicopter services." (Nov. 30, 2010 Order, Doc. No. 48 at 11-12.) The parties were permitted to conduct discovery strictly limited to the newly alleged facts included in Paragraphs 30-32 of the amended pleading. (Id. at 12, 13-14.) Depositions of the following persons were permitted: Plaintiff's confidential witness; James Shugart or another representative of PHI, Inc.; Gene Graves; and Jim Clement. (Id. at 13-14.)

The November 30, 2010 Order also permitted the parties to submit recommendations for additional discovery in regard to the facts alleged in Paragraphs 30-32 of the Amended Complaint. Plaintiff submitted a December 9, 2010 letter (Doc. No. 52) that proposed document requests. In Plaintiff's view, the document requests were "specifically tailored" to the newly alleged facts that a confidential witness overheard what Graves purportedly said in a telephone conversation in or about the first half of 2001. In actuality, the requests did not focus on the new allegations. Instead, the requests were directed to the entire 2001 year and sought a massive production of records. In a December 13, 2010 letter, Defendants responded to Plaintiff's recommendations, objecting that Plaintiff had not identified its confidential witness and the requests were "tantamount to full discovery on all of the allegations in the amended complaint and more." (Doc. No. 54.) In a December 22, 2010 letter (Doc. No. 55), Defendants requested an order compelling Plaintiff to identify its confidential witness. By December 30, 2010 Order

(Doc. No. 57), Plaintiff was directed to promptly identify its confidential witness; the scope of all permitted depositions was strictly limited to Paragraphs 30-32 in the Amended Complaint; and Plaintiff's requested document discovery was found unwarranted at that time.

Plaintiff identified Mike Tuttle, a former regional sales manager of Air Logistics, as its confidential source for the amended allegations. Tuttle and Gene Graves, the executive of Air Logistics (now known as Bristow) who allegedly engaged in price-fixing communications, were deposed on January 11 and 26, 2011, respectively. No other witnesses were deposed. Plaintiff did not request other depositions of permitted witnesses. The docket does not reflect that any other discovery was pursued after the Complaint was filed on June 12, 2009.

On February 11, 2011, Defendants moved for summary judgment in lieu of answering the Amended Complaint. (Doc. Nos. 63-66.) On February 25, 2011, Plaintiff opposed summary judgment (Doc. Nos. 67-69) and moved pursuant to Federal Rule of Civil Procedure 56(d), requesting that decision on summary judgment be continued to permit full discovery (Doc. No. 70). On March 9, 2011, Defendants replied to Plaintiff's opposition to summary judgment and Rule 56(d) motion (Doc. No. 73).

By declaration of its attorney in support of the Rule 56(d) motion, Plaintiff avers:

> Plaintiff believes that full discovery will lead to more information about communications among the Defendants that can be used to prove that Defendants conspired to raise prices for offshore helicopter services in the Gulf of Mexico starting in 2001, and also agreed not to try and obtain business from each others' customers. This would include the identity of competitors with whom Mr. Graves, or other executives of the Defendants, spoke.

> Plaintiff believes that full discovery will enable it to gather additional facts regarding a conspiracy to fix prices and to maintain share in the market for offshore helicopter services in the Gulf of Mexico in 2001 and thereafter, which would most certainly preclude summary judgment for Defendants.

(Naylor Decl. ¶¶ 16, 19, Doc. No. 70.)  Plaintiff also avers that production of documents in nine

described categories, with no date restriction, is "necessary and appropriate":

a. Transactional data reflecting prices charged by Defendants for offshore helicopter services, and Defendants' costs;

b. Information, including but not limited to, calendars, day-timers, telephone records, and correspondence, about any meeting, discussion or other communication between and among Defendants concerning the provision of those services;

c. Price sheets, price announcements, and price change letters generated by any Defendant concerning the provision of those services;

d. Information about Defendants' organizational structures;

e. Documents provided to or received from any government agency or representative, including, but not limited to, the Federal Bureau of Investigation, the United States Department of Justice, any law enforcement agency of any state, or any grand jury regarding any investigation into a possible violation of the antitrust laws[5];

f. Defendants' financial statements relating to offshore helicopter services;

g. Information about Defendants' membership and involvement in the activities of trade associations relating to offshore helicopter services;

h. Documents relating to any internal investigation conducted by any Defendant of actual or potential violations of law or company policy with respect to offshore helicopter services; and

i. Information relating to Defendants' pricing, marketing and sales strategy.

(Naylor Decl. ¶ 18, Doc. No. 70.)

## II.   THE SUMMARY JUDGMENT RECORD

The Amended Complaint is identical to the original pleading in all material respects,

---

[5] See Defs. Br., Doc. No. 47 at 3-4, noting that "on August 4, 2010, . . . the Antitrust Division closed its five year investigation of potential antitrust violations without taking any action."

except for new allegations of "price-fixing communications."[6]  According to Paragraphs 30

through 32 of the Amended Complaint, a confidential witness, later identified as Mike Tuttle,

overheard one side of a telephone conversation in the first half of 2001 between Gene Graves,

Vice President of Sales for Air Logistics, and a senior sales and marketing executive of PHI,

Inc., whom the confidential witness believed "may have been" Jim Shugart.  The conversation

concerned an agreement to "make a major price increase at or about the same time."[7]

At deposition, Plaintiff's confidential witness, Mike Tuttle, testified that he cannot recall

exactly what Gene Graves said:

> **Tuttle:**  I couldn't recall and tell you the exact conversation that went on.  I really
> just can't. . . . All I can remember for sure is the feeling I had afterwards –
> that it wasn't right.[8]

Tuttle cannot recall any words or phrases uttered by Graves during the conversation.[9]  Tuttle

does not know with whom Graves spoke:  "whether it was PHI or ERA, I can't remember.  And

who he was talking to, I don't know."[10]  "I didn't know who the person on the other end of the

---

[6]  Am. Compl ¶¶ 30-32; Pl. Mot. for Leave to Amend Compl., Doc. No. 46  at 1, 2 ¶ 8; Pl. Resp. to Defs. Statement of Material Undisputed Facts ¶ 14, Doc. No. 69 at 3-4.

[7]  Am. Compl. ¶¶ 31, 32, Doc. No. 51.

[8]  Mike Tuttle Deposition Transcript, January 12, 2011 ("Tuttle Dep.") 23:15-21, Defs. Br., Ex. B, Doc. No. 64-1.

[9]  Tuttle Dep. 23:15-24:9; 27:11-13; 64:4-7; Pl. Resp. to Defs. Statement of Material Undisputed Facts ¶ 25, Doc. No. 69 at 10.

[10]  Tuttle Dep. 22:19-21; 22:13-21; 8:10-13; Pl. Resp. to Defs. Statement of Material Undisputed Facts ¶ 25, Doc. No. 69 at 10 (admitting Tuttle did not recall the identity of the person with whom Graves was speaking).

phone was."[11]  Tuttle did not hear and does not know what the other person said.[12]  Tuttle cannot

remember whether he heard the beginning, middle, or end of Graves' conversation.[13]

Tuttle told Plaintiff's counsel that he believed Jim Shugart, who worked for PHI, Inc.,

was on the other end of the telephone line during Graves' conversation.[14]  Tuttle later "realized

that Shugart had already gone" to another company and that the allegation in the Amended

Complaint was "not true because [Shugart] wasn't there."[15]  Tuttle testified that he "assumed it

must have been Jim [Shugart], but that's an assumption."[16]  Tuttle further testified:

> **Tuttle:** I don't know if I said it was a senior marketing or executive at PHI, but it
> was somebody at PHI.[17]
>
> **Q.** So you don't know whether it was PHI or ERA on the phone?
> **Tuttle:** Correct.  I don't.
> **Q.** Could have been someone else, couldn't it?
> **A.** Yeah, but I couldn't figure out who.  Who else would it be?[18]
>
> **Q.** And you just clearly don't know – you don't know who was on the other side
> of that line?
> **Tuttle:** Correct.[19]

---

[11]  Tuttle Dep. 30:23-25; 30:13-31:4; 50:25-51:10; 53:20-23.

[12]  Tuttle Dep. 31:5-8; Pl. Resp. to Defs. Statement of Material Undisputed Facts ¶ 25, Doc. No. 69 at 10.

[13]  Tuttle Dep. 31:9-15.

[14]  Tuttle Dep. 30:13-23.

[15]  Tuttle Dep. 30:13-31:4, 32:22-33:13.

[16]  Tuttle Dep. 36:15-16.

[17]  Tuttle Dep. 50:13-15.

[18]  Tuttle Dep. 51:5-10.

[19]  Tuttle Dep. 53:20-23.

The Amended Complaint alleges that during this telephone conversation, Graves said that Jim Clement had authorized him to enter into an agreement among Air Logistics, PHI, and ERA to implement a major price increase at or about the same time.[20] Tuttle testified that he told Plaintiff's counsel that he had overheard Graves say that Jim Clement, President of Air Logistics, had authorized a price-fixing agreement.[21] However, Jim Clement had left Air Logistics in 1998 and was not there in the first half of 2001.[22] Tuttle testified that he "was mistaken because Jim [Clement] wasn't there at the time" and therefore the allegation in the Amended Complaint was not true.[23] Tuttle testified:

**Q.** Did [Graves] mention being authorized by anyone within the company to engage in this sort of conduct?

**Tuttle:** Again, I can't recall. I just – I don't know what the – you know, the meat of the conversation was other than the feeling I got after that conversation.[24]

**Tuttle:** Jim [Clement] had already gone at that particular time and it was – after ten years, you know, you get your people fouled up. So I may have said that, but that wasn't the case.[25]

**Q.** So the statement they made in the complaint that related to Mr. Clement was not a true statement?

**Tuttle:** Correct.[26]

---

[20] Am. Compl. ¶ 32(3).

[21] Tuttle Dep. 31:16-32:6.

[22] Gene Graves Deposition Transcript, January 26, 2011 ("Graves Dep.") 101:9-14, Pl. Decl., Ex. C, Doc. No. 68-2; Pl. Resp. to Defs. Statement of Material Undisputed Facts ¶ 16, Doc. No. 69 at 5.

[23] Tuttle Dep. 31:16-32:21; 48:9-49:14.

[24] Tuttle Dep. 24:4-9 (Tuttle further explained: "This happened ten years ago," id. 23:18, and that "after ten years, you know, you get your people fouled up." Id. at 32:1-2.).

[25] Tuttle Dep. 31:25-32:3.

[26] Tuttle Dep. 33:9-11; 35:8-13; Pl. Resp. to Defs. Statement of Material Undisputed Facts ¶ 25, Doc. No. 69 at 10-11 (admitting that Tuttle believes he was mistaken that Graves said Clement had authorized

The Amended Complaint alleges that during this telephone conversation, Graves (1) agreed with PHI to implement a major price increase; (2) confirmed with PHI that ERA had also agreed to make a major price increase at or about the same time; and (3) stressed the importance of Air Logistics, PHI and ERA raising prices in unison in order to maintain their respective customer bases.[27]  Tuttle testified:

> **Q.**  [D]id you understand that all three providers, Air Logistics, PHI and ERA, were in on it?
>
> **Tuttle:**  I couldn't really say that all three of them were in on it.  I suppose that, but I don't know for sure.[28]

The Amended Complaint also alleges that Graves and the person on the other end of the telephone line discussed and agreed upon the timing of price increase announcements.[29]  Tuttle does not know which company was the first to announce a price increase, and he does not know the timing of the respective price increases.[30]  Tuttle testified:

> **Tuttle:**  It could have been Air Logistics.  It could have been PHI.  I don't think it was ERA, but I don't know who exactly raised their rates first.  I have no idea. I can't remember that, who did it.[31]

Graves testified that while he was at Air Logistics during the first half of 2001, he did not discuss price increases with any competitors.[32]

---

Graves to enter into the alleged agreement).

[27]  Am. Comp. ¶ 32(1), (2), (4).

[28]  Tuttle Dep. 79:13-21.

[29]  Am. Compl. ¶ 32(5).

[30]  Tuttle Dep. 26:25-27:6.

[31]  Tuttle Dep. 27:3-6.

[32]  Graves Dep. 47:25-48:4, 48:18.

Tuttle testified that he heard what Graves said during the conversation.[33]  However, Tuttle testified only to his feeling, beliefs, and convictions about what was said in "conversations that went on between Gene [Graves] and . . . one of our competitors."[34]  He testified:

- The "whole gist of the conversation that I remember and the feeling that I got is that I knew it was our competition and that the conversation went on was price fixing."[35] "[T]hey were discussing the pricing or, you know, we're not going after your customers, you don't go after our customers."[36]  "[I]t was about a price increase."[37]

- "[T]he feeling I got" from that conversation was "we were going to raise our rates and everybody was going to do it and we weren't going to go after their customers.  And that's what the deal was.  Generally, that's what I got from the conversation."[38]

- Q:  "Did you believe that you had overheard a price fixing conversation?"
  A:  "I did, yes."[39]

- "That conversation was just between PHI and Gene Graves, and it had to do with not interfering – or we're going to raise the rates and, you know, come along with us."[40] Later at deposition, Tuttle testified that "it was somebody at PHI" and "I knew who it was at the time.  I don't know now. "[41]

Plaintiff admits that Tuttle:  does not recall any specific words or phrases from Grave's conversation; does not recall the identity of the person with whom Graves spoke; did not hear

---

[33]  Pl. Resp. to Defs. Statement of Material Undisputed Facts ¶ 25, Doc. No. 69 at 9-10.

[34]  Tuttle Dep. 8:10-13.

[35]  Tuttle Dep. 23:10-14.

[36]  Tuttle Dep. 25:5-7.

[37]  Tuttle Dep. 25:12.

[38]  Tuttle Dep. 27:18-22.

[39]  Tuttle Dep. 69:23-70:2.

[40]  Tuttle Dep. 26:16-20.

[41]  Tuttle Dep. 50:21-22; 51:14-15.

what the other person on the telephone with Graves said; and Tuttle "believes he was mistaken about his recollection that Mr. Graves said that Mr. Clement had authorized Mr. Graves to enter into an agreement between and among Air Logistics, PHI and ERA to implement a major price increase in the first half of 2001."[42]

III.    LEGAL STANDARDS

A.    Summary Judgment

Summary judgment can properly be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A fact is "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." Id. at 248. A dispute about a material fact is "genuine," and thus warrants trial, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252. The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence at trial, it would be insufficient to permit the non-moving party to carry its

---

[42]  Pl. Resp. to Defs. Statement of Material Undisputed Facts ¶ 25, Doc. No. 69 at 10-11.

burden of proof.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  Summary judgment must be entered against any party unable to present sufficient evidence in support of an essential element of a claim because "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."  <u>Id.</u> at 323.  If the record taken as a whole in a light most favorable to the nonmoving party "could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

Once the moving party meets its initial burden, the burden shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon mere allegations, speculation, unsupported assertions or denials of its pleadings.  <u>El v. SEPTA</u>, 479 F.3d 232, 238 (3d Cir. 2007).  In determining whether summary judgment is appropriate, "we must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor."  <u>Stratechuk v. Bd. of Educ. S. Orange–Maplewood Sch. Dist.</u>, 587 F.3d 597, 603 (3d Cir. 2009) (internal quotation marks and citations omitted), <u>cert. denied</u>, 131 S. Ct. 72 (U.S. 2010).

Federal Rule of Civil Procedure 56(b) authorizes a defending party to move "at any time" for summary judgment.  Such a motion may be made before pleading to the complaint, and supporting affidavits are not necessary.  <u>Hubicki v. ACF Indus., Inc.</u>, 484 F.2d 519, 522 (3d Cir. 1973) (affirming summary judgment where the only facts before the court were those contained in the plaintiff's complaint and opposing affidavit).

B.      Sherman Act § 1 Antitrust Price-Fixing Conspiracy Claim

Despite the factually intensive nature of antitrust cases, the Rule 56 standard remains the same.  <u>Pastore v. Bell Tel. Co. of Pa.</u>, 24 F.3d 508, 512 (3d Cir. 1994) ("there is no . . . 'special

burden [for] summary judgment in antitrust cases'") (quoting <u>Eastman Kodak Co. v. Image</u>

<u>Technical Servs., Inc.</u>, 504 U.S. 451, 468 (1992)).  The nonmoving party's inferences must still

be reasonable in order to reach the jury.  <u>Eastman Kodak</u>, 504 U.S. at 468 & n.14.

The Sherman Act, 15 U.S.C. § 1, requires a "contract, combination . . . , or conspiracy in

restraint of trade or commerce."  Evidence of parallel conduct by alleged co-conspirators – such

as setting prices at the same level – is not sufficient to show a proscribed agreement.  <u>In re Ins.</u>

<u>Brokerage Antitrust Litig.</u>, 618 F.3d 300, 321 (3d Cir. 2010).  At both the pleading and summary

judgment stages, plaintiffs relying on circumstantial evidence of an agreement must make a

showing (with well-pled allegations and evidence of record, respectively) of something more than

merely parallel behavior, something plausibly suggestive of and not merely consistent with

agreement.  <u>Id.</u>  As the Supreme Court and our Court of Appeals has long recognized, "parallel

conduct is 'just as much in line with a wide swath of rational and competitive business strategy

unilaterally prompted by common perceptions of the market.'"  <u>Id.</u> (quoting <u>Bell Atl. Corp. v.</u>

<u>Twombly</u>, 550 U.S. 544, 554 (2007); <u>Matsushita</u>, 475 U.S. at 594 ("mistaken inferences" of

conspiracy from ambiguous circumstantial evidence may "chill the very conduct the antitrust laws

are designed to protect').  "In order to enforce the Sherman Act's requirement of an agreement,

. . . 'a § 1 plaintiff's offer of conspiracy evidence must tend to rule out the possibility that the

defendants were acting independently.'"  <u>Ins. Brokerage</u>, 618 F3d at 321 (quoting <u>Twombly</u>, 550

U.S. at 554); <u>Matsushita</u>, 475 U.S. at 597, n.21 ("[C]onduct that is as consistent with permissible

competition as with illegal conspiracy does not, without more, support even an inference of

conspiracy.").

Plaintiffs basing a claim of conspiracy on inferences drawn from circumstantial evidence

of parallel behavior must make a showing of facts, referred to as "plus factors," the presence of which may indicate the existence of an actionable agreement:

> Although "[t]here is no finite set of such criteria . . . [,] [w]e have identified . . . at least three such plus factors: (1) evidence that the defendant had a motive to enter into a price fixing conspiracy; (2) evidence that the defendant acted contrary to its interests; and (3) 'evidence implying a traditional conspiracy.'"

Ins. Brokerage, 618 F.3d at 321-22 (quoting In re Flat Glass Antitrust Litig., 385 F.3d 350, 360 (3d Cir. 2004)).  Proof of these plus factors "tends to ensure that courts punish 'concerted action' – an actual agreement – instead of the 'unilateral, independent conduct of competitors.'"

Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co., 998 F.2d 1224, 1244 (3d Cir. 1993).  As our Court of Appeals has cautioned:

> [C]are must be taken with the first two types of evidence, each of which may indicate simply that the defendants operate in an oligopolistic market, that is, may simply restate the (legally insufficient) fact that market behavior is interdependent and characterized by conscious parallelism.

Ins. Brokerage, 618 F.3d at 322; In re Baby Food Antitrust Litig., 166 F.3d 112, 135 (3d Cir. 1999) ("[E]vidence of action that is against self-interest or motivated by profit must go beyond mere interdependence.").

IV.    DISCUSSION

Plaintiff contends that it should be permitted to pursue additional discovery before the summary judgment motion is decided.  Discussion of that contention will be postponed, in order that it may be evaluated in light of what Plaintiff has succeeded in establishing as of the date the motion for summary judgment was filed.

A.    Summary Judgment on This Record Would Be Appropriate

For the most part, the material facts in this case are not in dispute, with one crucial exception:  Graves testified that he did not have any discussions with Air Logistics' competitors

with respect to price increases for offshore helicopter services in the Gulf of Mexico during the first six months of 2001.  Plaintiff disputes this assertion, contending that Tuttle's testimony controverts Graves' testimony.  However, this testimony does not make summary judgment inappropriate because a reasonable jury could not return a verdict for Plaintiff on this record.

Tuttle's testimony about Graves' conversation is not probative of a purported agreement among competitors to  fix prices.  Tuttle has firsthand personal knowledge only of the words he heard Graves utter.  Nonetheless, Tuttle cannot recall what words Graves actually said.  Tuttle cannot identify the person with whom Graves allegedly spoke.  Tuttle never knew what the other person said.  Tuttle does not know whether he heard the entirety of the conversation between Graves and the other person.  Tuttle was mistaken in his surmise as to who was on the other side of the conversation.  Tuttle was mistaken in his surmise about who purportedly authorized Graves to act on behalf of Air Logistics.  Tuttle's testimony provides only his personal feelings, beliefs, and speculation about the content of the conversation.

Regardless of Tuttle's sincerity or the strength of his convictions, his testimony does not create a genuine issue of material fact.  See Lexington Ins. Co. v. W. Pa. Hosp., 423 F.3d 318, 332-33 (3d Cir. 2005) (deponent's testimony based on her beliefs, which were predicated on her assumptions about the evidence, did not create a genuine issue of material fact) (citing Hedberg v. Indiana Bell Tel. Co., Inc., 47 F.3d 928, 932 (7th Cir. 1995) ("Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.")); Carlson v. Arnot-Ogden Mem'l Hosp., 918 F.2d 411, 416 (3d Cir. 1990) (witness' "purely subjective impression without any factual support amounts to nothing of legal significance and is insufficient to defeat a motion for summary judgment").  Plaintiff has not

introduced evidence of legal significance suggesting that Tuttle's feelings and beliefs are reasonable, accurate, or grounded in objective fact.

Moreover, even if Tuttle could recall the words Graves said, Tuttle's testimony as to those words would not be competent to prove that Graves and a competitor conspired to fix prices. Before a co-conspirator's statement may be introduced at trial, the court must find by a preponderance of the evidence that "a conspiracy existed" and "the declarant and the party against whom the statement is offered were members of the conspiracy." United States v. Weaver, 507 F.3d 178, 181 (3d Cir. 2007); Rule 801(d)(2)(E) (the "contents of the statement . . . are not alone sufficient to establish . . . the existence of the conspiracy [and] the participation therein of the declarant and the party against whom the statement is offered"). Beyond Tuttle's testimony, the record does not contain any evidence that directly or indirectly, by inference from the alleged circumstantial evidence of parallel business conduct, evinces the formation of an anti-competitive agreement to fix prices. Moreover, given Tuttle's inability to identify the person with whom Graves spoke, and Tuttle's mistaken surmise about who authorized Graves to speak on behalf of Air Logistics, none of Defendants is implicated as a member of the purported conspiracy.

Plaintiff's amended allegations are simply unsubstantiated. Tuttle's purely subjective impressions and surmises do not cure the lack of legally significant evidence. In sum, Plaintiff has not come forward with any facts that show Defendants acted in concert with a unity of purpose or reached a meeting of the minds in an unlawful arrangement. All that remains of Plaintiff's proof is circumstantial evidence of parallel business conduct that is not sufficient to establish a proscribed anti-competitive agreement between or among any of the Defendants. Accordingly, there is no genuine issue of material fact as to whether Defendants entered into an

illegal agreement to fix prices or allocate customers in the market for offshore helicopter services in the Gulf of Mexico between 2001 and 2005.

B. Additional Discovery Pursuant to Rule 56(d) Is Not Warranted

As our Court of Appeals noted, "[a] claim of conspiracy might appear plausible in light of the well-pled facts in the complaint, only to appear deficient at the summary judgment stage, when (1) the plaintiff can no longer rely on mere allegations but must adduce evidence, and (2) the defendant's uncontroverted evidence is also added to the picture." Ins. Brokerage, 618 F.3d at 323, n. 21. Plaintiff contends that once it satisfied the pleading threshold, it became entitled to proceed with full Rule 26 discovery before any motion for summary judgment is considered.[43] Plaintiff wrongly supposes that summary judgment is categorically improper prior to full discovery, rather than something that is permissible in rare instances such as this case. See, e.g., In re Comp. of Managerial, Prof'l & Tech. Emps. Antitrust Litig., No. 1471, 2008 WL 3887619, at *11-12 (D.N.J. Aug. 20, 2008) (granting summary judgment in antitrust case where "merits-based discovery ha[d] not, for the most part, been permitted to proceed"). Summary judgment on this record would be appropriate because the record does not support a reasonable expectation that additional discovery would raise a genuine issue of material fact that Defendants illegally conspired to fix prices.

Federal Rule of Civil Procedure 56(d)[44] permits a court to order additional discovery if a

---

[43] Naylor Decl. ¶ 13, Doc. No. 70.

[44] Federal Rule of Civil Procedure 56 was amended April 28, 2010, effective December 1, 2010. As amended, Rule 56(d) carries forward without substantial change the provisions of former subdivision 56(f). Rule 56(d) provides:

> When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to its opposition, the

party avers that it cannot otherwise present specific facts to oppose a summary judgment motion. However, Rule 56(d) is not a shield against all summary judgment motions.  There must be good reason to conclude that evidence sufficient to defeat summary judgment exists and Plaintiff legitimately needs additional discovery to get that evidence.  If a party seeks to avoid entry of summary judgment under Rule 56(d), our Court of Appeals has long established that the party "must move beyond mere generalities and specify what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." Scott v. Graphic Commc'ns Int'l Union, Local 97-B, 92 Fed. App'x 896, 900 (3d Cir. 2004); Tarr v. FedEx Ground, 398 Fed. App'x 815, 821 (3d Cir. 2010); Pastore, 24 F.3d at 510-11; Lunderstadt v. Colafella, 885 F.2d 66, 70 (3d Cir. 1989); Dowling v. City of Philadelphia, 855 F.2d 136, 138-40 (3d Cir. 1988).

Plaintiff does not specify any particular facts or information that might pertain to the existence and members of the alleged price-fixing conspiracy, the critical issues of fact in dispute. Instead, Plaintiff seeks a massive production of documents in nine broadly described categories. On their face, the categories pertain to proof of the alleged parallel pricing conduct, industry practices, and other circumstances that are not sufficient to establish the alleged agreement to fix prices.  It is unclear how further discovery along these lines would have any bearing upon disposition of the summary judgment motion.  Beyond a general accusation of anti-competitive conduct and suspected conspiracy, Plaintiff does not explain what it expects to discover from

---

court may:
       (1)      defer considering the motion or deny it;
       (2)      allow time to obtain affidavits or declarations or to take discovery; or
       (3)      issue any other appropriate order.

these documents, how the documents might apply to their case, and why they could not have obtained that information before from Defendants or from other sources.  Plaintiff does not explain how, if these documents were produced, the information would preclude summary judgment on the issue for decision:  what Graves purportedly said in one telephone conversation in or about the first half of 2001.

Plaintiff only "believes that full discovery will lead to more information about communications among Defendants" and "the identity of competitors with whom Mr. Graves, or other executives of Defendants, spoke."[45]  Plaintiff only hopes that full discovery "would most certainly preclude summary judgment."[46]  These reasons are insufficient to establish a cognizable need for additional discovery.  See Pastore, 24 F.3d at 511 (finding that a similarly "amorphous allegation" in a Sherman Act § 2 attempted monopolization case was inadequate to explain what plaintiffs expected to discover, how it applied to their case, and why they could not obtain that information elsewhere); see also Tarr, 398 Fed App'x at 821 (finding no abuse of discretion in the decision to proceed to summary judgment where the nonmovant did not specify what evidence he believed he would obtain, or how it would affect his case; rather, he sought production of some 17,000 e-mails, expecting production would reveal material evidence).

Furthermore, Plaintiff does not explain why discovery was not conducted in the first year and a half of this litigation from June 12, 2009 to November 30, 2010.  Defendants' motion to dismiss, filed on September 4, 2009, did not prevent Plaintiff from proceeding with discovery. The motion to dismiss put Plaintiff on notice of shortcomings in its proof of an unlawful

---

[45]  Naylor Decl. ¶¶ 16, 19, Doc. No. 70.

[46]  Id. at ¶ 19.

agreement yet Plaintiff did not initiate discovery to support its allegations with facts.

Federal Rule of Civil Procedure 26(d) provides that "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." However, Plaintiff was not foreclosed from initiating discovery in order to obtain the information it needed. As our Court of Appeals stated:

> Rule 26(f) does not require the parties to delay conferring until afer a scheduling conference has been held or a scheduling order has been issued. The responsibility for arranging this conference and initiating discovery is placed squarely on the shoulders of the attorneys of record and not on the district court.

Scott, 92 Fed. App'x at 901. Plaintiff gives no explanation for why it waited for the Court to order depositions rather than taking the initiative to confer with the other parties about discovery as is required by Rule 26(f).

Plaintiff's proposed far-reaching, overly broad document requests, none of which pertain specifically to the alleged conspiratorial agreement, are the product of a factually unsubstantiated claim. For example, Plaintiff seeks the identity of all competitors with whom Graves spoke, but in the one conversation Tuttle overheard, he cannot recall the words spoken by Graves and cannot identify the person with whom Graves spoke. Tuttle offers no information that might narrow the requested production of documents to target any particular individuals or specific conversations. Given the paucity of material evidence, Plaintiff necessarily seeks all telephone records, without any restrictions.[47] The discovery net is cast wide because the foundation for the requests is purely speculative. No facts have been presented that suggest further discovery would remedy Tuttle's conjecture and speculation. See Franulovic v. Coca Cola Co., 390 Fed. App'x 125, 128 (3d Cir.

---

[47] See, e.g., Naylor Decl. ¶ 18(b), Doc. No. 70 (requesting: "Information, including but not limited to, calendars, day-timers, telephone records, and correspondence, about any meeting, discussion, or other communication between and among Defendants concerning the provision of those services . . . .").

2010) (court did not abuse its discretion in denying nonmovant's motion for continuance of summary judgment because her claims were based on conjecture and speculation that would not be remedied by further discovery); Blough v. Holland Realty, Inc., 574 F.3d 1084, 1091 (9th Cir. 2009) (affirming summary judgment before allowing further discovery in a Sherman Act § 1 *per se* unlawful tying claim, where no plausible basis existed to believe that the information sought existed).  At this juncture, it is fair to conclude that Plaintiff has not marshaled facts to support the alleged conspiracy because it cannot do so.

Moreover, to allow this action to continue in light of the strong suggestion from the record that it is groundless would contravene the antitrust rationale of requiring proof of at least one plus factor, in this case a traditional conspiratorial agreement, in order to avoid penalizing "a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market."  Twombly, 550 U.S. at 554; Matsushita, 475 U.S. at 594 (warning that "mistaken inferences" of conspiracy from ambiguous circumstantial evidence may "chill the very conduct the antitrust laws are designed to protect"); Flat Glass, 385 F.3d at 357 (conspiracy evidence must tend to rule out the possibility that the defendants were acting independently in order "to avoid deterring innocent conduct that reflects enhanced, rather than restrained, competition").  See also Emigra Group, LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP, 612 F. Supp. 2d 330, 343-44, 364-65 (S.D.N.Y. 2009) (staying discovery before imposing summary judgment where the antitrust claims were insubstantial and suggested a motive to gain access through pretrial

discovery to defendants' competitively sensitive information for plaintiff's own business reasons). Prolonging discovery would consume time, energy, and resources, which might inhibit lawful competitive conduct and the efficient administration of justice.

For the above reasons, Defendants' motion for summary judgment will be granted, and judgment will be entered in Defendants' favor and against Plaintiff on all claims. An appropriate Order accompanies this Memorandum.

BY THE COURT:
/s/ Legrome D. Davis

Legrome D. Davis, J.